1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF WASHINGTON
8
9   CHRISTINA WOOD,                          No. 1:14-CV-03124-JTR
10          Plaintiff,                       ORDER GRANTING PLAINTIFF'S
11                                           MOTION FOR SUMMARY
                 v.                          JUDGMENT
12
13  CAROLYN W. COLVIN,
14  Commissioner of Social Security,
15          Defendant.
16

17        **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

18  Nos. 15, 18.  Attorney D. James Tree represents Christina Wood (Plaintiff);

19  Special Assistant United States Attorney Franco L. Becia represents the

20  Commissioner of Social Security (Defendant).  The parties have consented to

21  proceed before a magistrate judge.  ECF No. 7.  After reviewing the administrative

22  record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion

23  for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment;

24  and **REMANDS** the matter to the Commissioner for calculation and immediate

25  award of benefits.

26                              **JURISDICTION**

27        Plaintiff filed an application for Supplemental Security Income (SSI) on

28  March 11, 2011, alleging disability beginning on April 7, 2006, due to mental and

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

physical impairments. Tr. 166-73. The SSI application was denied initially and upon reconsideration. Tr. 110-13, 116-21. Administrative Law Judge (ALJ) Tom L. Morris held a hearing on September 12, 2012, at which Plaintiff, represented by counsel, testified as did vocational expert (VE) Trevor Duncan. Tr. 41-80. The ALJ issued an unfavorable decision on October 26, 2012. Tr. 25-36. The Appeals Council denied review. Tr. 1-4. The ALJ's October 2012 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 28, 2014. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 42 years old at the time she filed her SSI application. Tr. 43. Plaintiff is married and has five children. Tr. 49. Plaintiff did not complete school past the eighth grade and has not obtained a GED. Tr. 50. Plaintiff has never been employed at a full time job. Tr. 49.

At the administrative hearing, Plaintiff described several traumatic events that have happened to her, including an incident where police entered her house and Tazed her. Tr. 51, 56. Plaintiff testified that she has nightmares, trouble sleeping, and is usually agitated to the point that "[she] [can] hardly be around people." Tr. 51. Plaintiff stated that she spends most of her time in her room and does not like to talk to others. Tr. 53. Plaintiff testified that stress caused her ulcers to bleed and makes her vomit three or four times a week. Tr. 54. Plaintiff stated that, due to injuries sustained in a car accident, she can only stand for about five minutes before her back starts hurting. Tr. 57-58. Plaintiff testified that she has severe headaches about once a week. Tr. 58. Plaintiff has trouble concentrating and low energy. Tr. 59. Plaintiff also experiences serious pain in

her left foot.  Tr. 77-78.

Plaintiff testified that sometimes it's hard for her to get out of bed in the morning.  Tr. 52.  She can occasionally go to the grocery store, Tr. 52, and typically tries to do a little laundry and some dishes each day, Tr. 55.  Plaintiff testified that she takes her grandchildren to the movies "once in a while."  Tr. 59.

Plaintiff did not have medical insurance since five or six years prior to the hearing.  Tr. 53.  Plaintiff stated that she was interested in mental health counseling, but could not afford it without insurance coverage.  Tr. 60-61.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v.*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

1  *Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

2  **SEQUENTIAL EVALUATION PROCESS**

3        The Commissioner has established a five-step sequential evaluation process

4  for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen*

5  *v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of

6  proof rests upon claimants to establish a prima facie case of entitlement to

7  disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once

8  claimants establish that physical or mental impairments prevent them from

9  engaging in their previous occupations. 20 C.F.R. § 416.920(a)(4). If claimants

10  cannot do their past relevant work, the ALJ proceeds to step five, and the burden

11  shifts to the Commissioner to show that (1) the claimants can make an adjustment

12  to other work, and (2) specific jobs exist in the national economy which claimants

13  can perform. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193-1194 (2004).

14  If claimants cannot make an adjustment to other work in the national economy, a

15  finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(i-v).

16  **ADMINISTRATIVE DECISION**

17        On October 26, 2012, the ALJ issued a decision finding Plaintiff was not

18  disabled as defined in the Social Security Act.

19        At step one, the ALJ found Plaintiff had not engaged in substantial gainful

20  activity since March 11, 2011, her application date. Tr. 27.

21        At step two, the ALJ determined Plaintiff had the following severe

22  impairments: degenerative disc disease, osteoarthritis, obesity, gastritis and

23  duodenitis, other disorders of gastrointestinal system, thyroid disorders, anxiety

24  disorders, and affective disorders. Tr. 27.

25        At step three, the ALJ found Plaintiff did not have an impairment or

26  combination of impairments that met or medically equaled the severity of one of

27  the listed impairments. Tr. 27. The ALJ assessed Plaintiff's residual function

28  capacity (RFC) and determined she had the ability to perform sedentary work

subject to the following limitations: limited to frequent climbing of ramps/stairs, stooping, kneeling, crouching, and crawling; never climbing ladders/ropes/scaffolds; must avoid concentrated exposure to extreme cold, extreme heat, and hazards; limited to frequent contact with supervisors/coworkers; limited to occasional contact with the general public; and limited to low stress, defined as only occasional changes in a work setting. Tr. 29.

At step four, the ALJ concluded that Plaintiff had no past relevant work. Tr. 35.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of assembler, semi-conductor bonder, and ticket taker. Tr. 35-36. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 11, 2011, through the date of the ALJ's decision, October 26, 2012. Tr. 36.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by failing to (1) properly credit Plaintiff's testimony about the severity of her symptoms; (2) accord weight to the opinions of Plaintiff's psychological consultative examiners; (3) credit the lay witness testimony of Charles Wood; and (4) account for all of Plaintiff's limitations in the ALJ's RFC determination.

## DISCUSSION

### A.    Plaintiff's Credibility

Plaintiff contests the ALJ's adverse credibility determination. ECF No. 15 at 19-26.

It is generally the province of the ALJ to make credibility determinations,

*Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but the medical evidence did not support the alleged ongoing severity of symptoms as reported by Plaintiff.  Tr. 31-32.  In finding Plaintiff less than credible, the ALJ reasoned that Plaintiff's reporting was (1) contradicted by her own statements; (2) inconsistent with her activities of daily living (ADL); and (3) not supported by objective medical evidence.  Tr. 31-32.  The ALJ also reasoned that Plaintiff's impairments could be managed with "treatment compliance," and suggested that Plaintiff's current unemployment may result from a lack of work history rather than medical problems.  Tr. 31-32.

### 1.    Inconsistencies in Self-Reporting and ADL

The ALJ identified a number of inconsistencies between Plaintiff's self-reporting of her symptoms and between her self-reporting and her ADL.  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid."  *Smolen*, 80 F.3d at 1284.  Furthermore, "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)

(internal quotation marks omitted).

The ALJ found Plaintiff's symptom reporting inconsistent with the fact that she also reported being able to go shopping, take her grandchildren to a movie, and help prepare for her grandchild's birthday party. The Court agrees with Plaintiff that Plaintiff never testified that she cannot leave the house. *Compare* Tr. 31 (ALJ stating "[t]he claimant says she cannot leave the house") *with* Tr. 53 (Plaintiff testifying that she spends most of her time in her room and has "a hard time being around people"). The fact that Plaintiff occasionally went shopping, occasionally took her grandchildren to the movies, and once made cupcakes and wrapped presents is not inconsistent with her testimony that she spends most of her time in her room. Thus, the ALJ erred in finding these inconsistencies.

The ALJ also cited Plaintiff's testimony that she walked three blocks to a convenience store three months prior to the hearing. The ALJ inferred from this testimony that Plaintiff was capable of walking "six blocks round trip plus the standing that comes from being in the store." Tr. 31. Plaintiff does not dispute this inference, and such testimony is contrary to Plaintiff's statement that she "cannot walk more than a block." Tr. 198. The ALJ's conclusion that Plaintiff can walk more than she alleges is supported by substantial evidence, *see*, *e.g.*, Tr. 391 (Plaintiff reported walking for exercise 3-4 times per week), and is a specific, clear, and convincing reason for undermining Plaintiff's credibility.

The ALJ cited instances where Plaintiff was able to go fishing ("when driven right to the fishing spot"), went to a casino, watched television, and exercised. Tr. 31. As discussed in the preceding paragraph, there is some inconsistency in Plaintiff's reported ability to walk and exercise. But being able to watch television is consistent with Plaintiff's testimony. *See*, *e.g.*, Tr. 199 (Plaintiff reporting that she typically watches television from the time she wakes up to about 2:00 p.m.). Furthermore, Plaintiff's activities of going fishing occasionally and going to a casino once (followed by an emergency room visit),

neither of which require significant physical exertion or extensive social contact, do not contradict Plaintiff's testimony that she generally isolates herself in her room and has trouble being other people.  Tr. 53.  Other than the inconsistencies regarding Plaintiff's walking ability, Plaintiff's ADL, as identified by the ALJ, do not appear to contradict her self-reporting and the ALJ erred in using these instances to discredit Plaintiff.  *See Reddick v. Chater* 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

### 2.    Unsupported by Objective Medical Evidence

The ALJ found "no objective medical evidence to support the alleged limiting effects of Plaintiff's impairments."  Tr. 31.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

A number of Plaintiff's reported physical impairments are documented by X-rays, a CT scan, and other test results.  ECF No. 15 at 24.  In interpreting the severity of these impairments, the ALJ properly relied on the opinion of examining source, Steven Rode, DO, who opined that Plaintiff's physical limitations resulted in few workplace limitations.  Tr. 31-32, 357.

Plaintiff's mental impairments are supported by the mental status examinations (MSEs) of Jesse McClelland, Ph.D. and Matthew Anderson, L.I.C.S.W., discussed *infra*.   Both Dr. McClelland and Mr. Anderson opined that Plaintiff's mental impairments would significantly affect her ability to function in the workplace.  These opinions, supported by MSEs, are consistent with Plaintiff's testimony.

While the ALJ did not err in concluding that the severity of Plaintiff's physical impairments were unsupported by the medical evidence, the ALJ was

mistaken in likewise concluding that objective medical evidence did not support Plaintiff's alleged mental impairments. Therefore, the ALJ's conclusion that "no objective medical evidence . . . support[s] the alleged limiting effects of Plaintiff's impairments," Tr. 31, is not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

### 3.    Impairments Manageable with Treatment

The ALJ concluded that Plaintiff's "impairments are all medically manageable with treatment compliance." Tr. 32. The ALJ noted that Plaintiff's "[a]ccess to insurance is an issue," but further noted that "the records suggest she has been referred to low cost providers." Tr. 32.

Generally, the fact that a condition can be remedied by treatment or medication is a legitimate reason for discrediting a claimant's testimony. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Failure to follow a course of treatment may be excused, however, if the claimant cannot afford the treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

There is substantial evidence in the record that Plaintiff has not had health insurance coverage for several years prior to the hearing. Plaintiff apparently has also been unable to obtain discounted health services due to her assets. *See* Tr. 61 ("I can't get help no help for nothing. They say I own too much."). The ALJ's citation to "Exhibit 10F/3, 11" does not appear to support his conclusion that Plaintiff was "referred to low cost providers." Tr. 32. Furthermore, the ALJ suggests that Plaintiff's habit of smoking one pack of cigarettes a day casts doubt on her reporting that she could not afford her medication. Tr. 32. The fact that Plaintiff smokes, and has money to spend to spend on cigarettes, is not adequate grounds to undermine her credibility or find that she can afford medical treatment. *See*, *e.g.*, *McElhaney v. Astrue*, 2011 WL 1045760, *5-6 (W.D. Wash. 2011) (finding ALJ erred in citing claimant's cigarette smoking as grounds to conclude that claimant could afford medical treatment).

Given that substantial evidence in the record supports the fact that Plaintiff did not have insurance coverage, and did not have enough money to pay for medical treatment, the ALJ should not have used the fact that she failed to undergo recommended courses of treatment as grounds for discrediting Plaintiff.

### 4.    Lack of Work History

The ALJ noted that "[Plaintiff] has never worked, which raises some questions as to whether the current unemployment is truly the result of medical problems." Tr. 31.  Plaintiff testified that she had never worked full time because she had five children and her husband supported the family. Tr. 49.  The ALJ has latitude to consider Plaintiff's limited work history as grounds for questioning whether her medical impairments were the sole reason for being unable to work. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant had limited work history and "ha[d] shown little propensity to work in her lifetime" was a specific, clear, and convincing reasons for discounting the claimant's testimony).  The ALJ's reasoning that Plaintiff's lack of work history suggested that she might not work for reasons other than disability was a specific, clear, and convincing reason for discounting her credibility.

### 5.    Conclusion

Three out of the four reasons underlying the ALJ's adverse credibility determination were based, in some part, on legal error or not supported by substantial evidence.  Given the extent of the ALJ's errors, the Court cannot say that the errors were harmless.  *Cf. Batson*, 359 F.3d at 1197 (finding harmless error when one of the ALJ's reasons underlying an adverse credibility determination was flawed but several other reasons supported it).  Therefore, the Court will remand as discussed *infra*.

## B.    ALJ's Evaluation of Medical and "Other" Sources

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by examining psychologist Jesse McClelland, M.D., and Russell

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

Anderson, L.I.C.S.W.  ECF No. 15 at 12-18.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant.  *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631.  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion.  *See*, *e.g.*, *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Furthermore, an ALJ is required to consider evidence from "other sources," including social workers, 20 C.F.R. § 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  Germane reasons to discount

an opinion include contradictory opinions and lack of support in the record. *Thomas*, 278 F.3d at 957.  Even though medical source evidence is the only way to establish an impairment, an ALJ cannot ignore information from non-acceptable medical sources regarding a claimant's physical and mental capabilities.  *Sprague*, 812 F.2d at 1232.

In this case, the opinion of reviewing psychiatrist James Bailey, Ph.D., Tr. 105-09, contradicts the opinions of Dr. McClelland and Mr. Anderson.  Therefore, the ALJ was only required to provide specific and legitimate reasons for rejecting Dr. McClelland's opinion and germane reasons for rejecting Mr. Anderson's opinions.

### 1.    Dr. McClelland

Plaintiff presented to Dr. McClelland for a psychiatric review on May 21, 2011.  Tr. 358-63.  Dr. McClelland did not review any medical records other than a disability report completed by Plaintiff.  Tr. 358.  Dr. McClelland noted that Plaintiff had "significant fears of interactions which inhibit her socially."  Tr. 360.  Dr. McClelland observed Plaintiff as "well-groomed" but in "obvious pain."  Tr. 360.  Dr. McClelland diagnosed Plaintiff with major depressive disorder, severe, recurrent, without psychotic features and post-traumatic stress disorder, delayed onset, chronic.  Tr. 361.

Dr. McClelland opined, "If [Plaintiff] is able to get the appropriate combination of medications and therapy, there is good likelihood that her condition could improve within the next 12 months."  Tr. 362.  Due to her "medical problems" and the "complicated nature of her psychological problems," however, Dr. McClelland noted Plaintiff's "overall prognosis is poor on the long term."  Tr. 362.  Dr. McClelland opined that Plaintiff should be able to perform "simple and repetitive tasks," but she would take longer to learn a particular job, would struggle "significantly to interact with coworkers and the public," and would have trouble maintaining regular attendance and dealing with the "usual stress encountered in

the workplace." Tr. 362.  Dr. McClelland further noted that Plaintiff is "highly dysfunctional due to her psychiatric problems," and is "basically unable to do anything." Tr. 362.

The ALJ gave little weight to Dr. McClelland's opinions, reasoning his opinions were (1) not based on a review of any "longitudal medical records," (2) solely based on Plaintiff's self-reporting, and (3) inconsistent with his notes from his mental status examination.  Tr. 33.

The ALJ did not provide specific and legitimate reasons for rejecting Dr. McClelland's opinions.  Although Dr. McClelland did not review any of Plaintiff's medical records, this is unsurprising as Plaintiff has relatively few medical records. Other than passing references to depression and anxiety in hospital and physician's reports, the record contains virtually no mental health treatment records prior to Plaintiff's SSI application.  The fact that Dr. McClelland did not review records that do not exist is not a proper ground for rejecting Dr. McClelland's opinion. Likewise, the fact that his report is based on Plaintiff's self-reporting is not an appropriate ground to reject Dr. McClelland's opinion as the Court found *supra* that the ALJ's adverse credibility finding was flawed.  Finally, Dr. McClelland's observations of Plaintiff during the mental status exam might contradict Dr. McClelland's opinions and diagnoses, but these inconsistencies alone are not enough to complete discredit Dr. McClelland's report.  The fact that Plaintiff can present herself to a treatment provider to receive medical care in a one-on-one clinical setting is not inconsistent with her testimony that she generally stays home and avoids other people.  Furthermore, Dr. McClelland's observations have little, if any, bearing on Plaintiff's ability to function socially.  The ALJ failed to provide specific and legitimate reasons for giving Dr. McClelland's opinions little weight.

## 2.    Mr. Anderson

Mr. Anderson completed a psychiatric evaluation of Plaintiff on August 17, 2011.  Tr. 374-80.  Mr. Anderson diagnosed major depressive disorder, single

episode, severe, without psychotic features; posttraumatic stress disorder; pain
disorder associated with both psychological factors and a general medical
condition; and, various physical impairments.  Tr. 376.  Mr. Anderson noted
Plaintiff had "[r]ecurrent suicidal thoughts, no job, few friends, paired family
relationships, anxiety, major mood dysfunction, [and] serious impairment in social
and occupational functioning."  Tr. 376.  Mr. Anderson assessed a number of
marked limitations Plaintiff would have relating to cognitive and social skills
required in the work place.  Tr. 377.  Mr. Anderson commented that Plaintiff
"[w]ould likely function[] better in a more solitary work environment, but would
still have problems with communication[] and ability to focus and stay on task."
Tr. 377.  Mr. Anderson concluded, "At the present time [Plaintiff] is struggling
just to complete activities of daily living, primarily as a result of chronic pain, and
depression, poor motivation, and negative expectations."  Tr. 377.  Mr. Anderson
further opined, "After protracted treatment, [Plaintiff] may be able to engage in
more solitary type of work [that accommodates] her anxiety and relational
problems."  Tr. 377.

The ALJ gave little weight to Mr. Anderson's opinions.  The ALJ reasoned
that Mr. Anderson was not an acceptable medical source, had not reviewed
Plaintiff's "longitudinal medical records," and his opinions were based on
Plaintiff's self-reporting, contrary to Plaintiff's ADL, and internally inconsistent.
Tr. 33.

The ALJ failed to provide germane reasons for rejecting Mr. Anderson's
opinions.  Even though Mr. Anderson is not an acceptable medical source, the ALJ
must still generally give weight to his assessment of how Plaintiff's impairments
affect her ability to work.  *Sprague*, 812 F.2d at 1232.  For the reasons mentioned
in the Court's discussion of Dr. McClelland's opinions *supra*, the facts that Mr.
Anderson did not review Plaintiff's longitudinal medical records and that his
opinions were based on Plaintiff's self-reporting are not legitimate reasons for

rejecting Mr. Anderson's opinions. Also as discussed *supra*, Plaintiff's reporting of walking and exercise is inconsistent with some of her testimony. But the inconsistencies in her reporting of her physical impairments do not necessarily suggest that "she was not as isolated as alleged," as found by the ALJ. Tr. 33. Thus, the ALJ failed to provide germane reasons for giving little weight to Mr. Anderson's opinions concerning how Plaintiff's impairment affect her ability to work.

## C.    Lay Witness Testimony

Plaintiff argues that the ALJ failed to properly consider the statements of Charles Wood, Plaintiff's husband. ECF No. 15 at 26-29.

Lay witness testimony cannot establish the existence of medically determinable impairments. *Cf.* 20 C.F.R. § 416.913(d)(a). But lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050 (9th Cir. 2006); 20 C.F.R. § 416.913(d)(4); *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Simply stating that the lay witness testimony does not objectively establish a medically determinable impairment is not a germane reason for rejecting lay witness testimony that concerns a claimant's ability to work. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (stating that the ALJ "should not have discredited [a lay witness's] testimony on the basis of its relevance or irrelevance to medical conclusions.").

Mr. Wood, Plaintiff's husband, completed a third party function report on May 3, 2011. Tr. 206-14. Mr. Wood stated that Plaintiff has a variety of physical and mental ailments that make it difficult for her to complete household chores and daily activities. Tr. 207-09. Mr. Wood stated that he has to shave Plaintiff's legs, help Plaintiff dress herself, and help Plaintiff wash herself and get in and out of the bath. Tr. 208. Mr. Wood stated that Plaintiff can start vacuuming or laundry, but

cannot finish the job and that she tries to help with yard work.  Tr. 209-10.  Mr.
Wood stated that Plaintiff can go shopping once a week, but he usually
accompanies her.  Tr. 210.  Mr. Wood stated that Plaintiff spends most of her time
watching television, and will sometimes watch her grandchildren and go for short
drives.  Tr. 211.  Mr. Wood indicated that Plaintiff has no problem getting along
with friends, family, or others, but that Plaintiff is not interested in, and gets
anxious at the prospect of, being around other people.  Tr. 212.  Mr. Wood noted
Plaintiff had difficulty walking, standing, concentrating, remembering, and dealing
with authority figures.  Tr. 212-13.

The ALJ gave little weight to Mr. Wood's statements.  The ALJ reasoned
Mr. Wood's statements were inconsistent with (1) Plaintiff's medical records, and
(2) Plaintiff's self-reporting.

The ALJ partially erred in considering Mr. Wood's statements.  The ALJ
correctly noted that Mr. Wood's statements regarding how he helps Plaintiff dress,
bathe, and shave are inconsistent with Plaintiff's own reporting.  *See* Tr. 354
(Plaintiff reporting she can take care of personal needs).  Also, as discussed *supra*,
there are some inconsistencies regarding Plaintiff's ability to walk and exercise.
But Mr. Wood's statements regarding Plaintiff's ability to perform household
chores, cognitive functioning, and social limitations are largely consistent with
Plaintiff's testimony and the reports of Dr. McClelland and Mr. Anderson;
therefore, the ALJ partially erred in finding Mr. Wood's statements inconsistent
with Plaintiff's medical records and self-reporting.

**D.    RFC Assessment**

Plaintiff argues that the ALJ's RFC assessment does not account for all of
Plaintiff's functional limitations, particularly her mental limitations.  ECF No. 15
at 29.

A claimant's RFC is "the most [a claimant] can still do despite [her]
limitations."  20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P,

Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."). In formulating an RFC, the ALJ weighs medical and other source opinion and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

In this case, the ALJ determined Plaintiff had the ability to perform sedentary work subject to the following: limited to frequent climbing of ramps/stairs, stooping, kneeling, crouching, and crawling; never climbing ladders/ropes/scaffolds; must avoid concentrated exposure to extreme cold, extreme heat, and hazards; limited to frequent contact with supervisors/coworkers; limited to occasional contact with the general public; and limited to low stress, defined as only occasional changes in a work setting. Tr. 29. When the ALJ asked the VE if a hypothetical individual with these limitations could work, the VE opined that the individual could work as an assembler, semi-conductor bonder, or ticket-taker. Tr. 69.

"Hypothetical questions posed to the [VE] must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422. Nonetheless, an ALJ is only required to present the VE with those limitations the ALJ finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Plaintiff's counsel posed numerous hypothetical questions to the VE. In

1   response to Plaintiff's counsel's questioning, the VE opined that a person would
2   not be able to sustain employment if he or she missed more than twelve workdays
3   a year due to psychological symptoms. Tr. 73. The VE also testified that a person
4   would likely not be able to work if he or she needed two or more extra breaks per
5   week due to psychological symptoms. Tr. 74. Similarly, a person would not be
6   able to work if he or she demonstrated "off-task behavior" more than ten percent of
7   the workday. Tr. 75.

8       When greater weight is given to Plaintiff's testimony and the opinions of Dr.
9   McClelland and Mr. Anderson, the Court finds that Plaintiff's counsel's
10  hypothetical questions to the VE more accurate reflect Plaintiff's limitations.
11  Plaintiff testified that "[she] [can] hardly be around people," Tr. 51, that she spends
12  most of her time in her room and does not like to talk to others, Tr. 53, that stress
13  caused her ulcers to bleed and makes her vomit three or four times a week, Tr. 54.
14  Dr. McClelland opined that Plaintiff would struggle "significantly to interact with
15  coworkers and the public," and would have trouble maintaining regular attendance
16  and dealing with the "usual stress encountered in the workplace." Tr. 362. Dr.
17  McClelland further noted that Plaintiff is "highly dysfunctional due to her
18  psychiatric problems," and is "basically unable to do anything." Tr. 362. Mr.
19  Anderson noted that Plaintiff would likely demonstrate social isolation, distrust of
20  others, and have panic attacks. Tr. 377. Mr. Anderson noted that Plaintiff had
21  "poor interpersonal communication skills, "difficulty focusing and staying on
22  tasks," and was "likely to quit or walk off the job." Tr. 377. When greater weight
23  is given to Plaintiff's self-reporting and the medical evidence, the Court finds that
24  the ALJ's RFC determination, and hypothetical questions posed to the VE, did not
25  set out all of Plaintiff's limitations and restrictions. *Embrey*, 849 F.2d at 422.

26                              **REMEDY**
27      The decision whether to remand for further proceedings or reverse and
28  award benefits is within the discretion of the district court. *McAlliser v. Sullivan*,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 18

888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990).  This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004).

In this case, there are no outstanding issues that must be resolved before a determination can be made.  Given the general consensus between Plaintiff's examining medical sources, which is largely consistent with Plaintiff's self-reporting, it is clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Therefore, the Court will remand for immediate calculation of benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and is based on legal error. Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for calculation and immediate award of benefits.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy

ORDER GRANTING PLAINTIFF'S MOTION . . . - 19

1 | to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff**
2 | and the file shall be **CLOSED**.
3 |          DATED April 27, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 20